## Arthur Golab v. City of New Britain et al.
### (13098)

Healey, Shea, Callahan, Santaniello and Glass, Js.

Argued June 11—decision released August 18, 1987

*Donald E. Shevchuk*, for the appellant (plaintiff).
*Joseph E. Skelly, Jr.*, for the appellees (defendants).

Glass, J. The dispositive issue in this appeal is whether the period of time during which police officer Arthur Golab, the plaintiff, had been placed under suspension, prior to being formally dismissed, constituted service for the purpose of determining his eligibility to receive retirement benefits. Golab sought a writ of mandamus compelling the defendants, the city of New Britain (city) and the board of trustees of the policemen's

pension fund of New Britain (board), to grant his application for retirement benefits. After a trial to the court, judgment was rendered for the defendants, from which the plaintiff has appealed. We find no error.

I

The parties have stipulated to the following facts: On January 28, 1958, Golab became a supernumerary police officer in the New Britain police department, and began employment as a regular police officer on February 7, 1959. On December 3, 1966, he was promoted to the position of police sergeant and on November 26, 1973, he was promoted to the position of police lieutenant. Golab subsequently admitted paying the sums of $500 and $3500 for his promotions to sergeant and lieutenant, respectively. On November 14, 1979, he was arrested and charged with the crime of perjury in connection with his testimony before a judicial inquiry concerning the purchase of his promotions. On November 21, 1979, the board of police commissioners (commissioners) suspended Golab without pay from the police department. This suspension was to remain in effect until the first regularly scheduled meeting of the commissioners following the ultimate disposition of the perjury charge. During the suspension, the city continued to provide Golab with health insurance benefits, although he was designated as being under suspension on the police department daily roster. During the period of suspension, however, Golab did not pay any assessments to the retirement pension fund.

On February 26, 1983, Golab, while still under suspension, submitted a written request for retirement to the commissioners. On April 27, 1983, he pleaded guilty to the charge of hindering prosecution in the second degree in violation of General Statutes §§ 53a-165 (4) and 53a-167. On June 14, 1983, the commissioners held a disciplinary hearing to consider Golab's admissions

that he had purchased his promotions to sergeant and lieutenant. The commissioners concluded that Golab, by purchasing his promotions, had violated the rules of the New Britain civil service commission. Because of this conclusion, he was discharged from the police department effective June 14, 1983. The commissioners then referred the question of Golab's eligibility for retirement benefits to the board. On July 12, 1983, almost one month after his discharge, Golab submitted a written clarification of his retirement request, specifically requesting retirement at the rank of patrolman. His request for retirement benefits was denied by the board.

After the board's denial, Golab brought an action seeking a writ of mandamus compelling the city and the board to grant his application for retirement benefits, claiming that under the charter of the city of New Britain he was entitled to the benefits. Based on these underlying facts, the trial court denied his prayer for a writ of mandamus. Reasoning that Golab, by purchasing his two promotions, had violated the rules of the civil service commission and had thereby "perpetrated fraud against the City," the court concluded that Golab was precluded from seeking a writ of mandamus because of the equitable doctrine of "unclean hands," and because he had failed to prove that he had a clear legal right to such relief.

## II

On appeal, Golab claims that the trial court erred in denying his prayer for a writ of mandamus because of the doctrine of "unclean hands" and because he had failed to prove that he had a clear legal right to such a remedy.

Mandamus is an extraordinary remedy, available in limited circumstances for limited purposes. *Beccia* v. *Waterbury,* 185 Conn. 445, 453, 441 A.2d 131 (1981).

"It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law. *Chesebro* v. *Babcock,* 59 Conn. 213, 217, 22 A. 145 [1890]; High, Extraordinary Legal Remedies (3d Ed.), pp. 10, 13. That discretion will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks." *State ex rel. Donahue* v. *Holbrook,* 136 Conn. 691, 693, 73 A.2d 924 (1950); *Pape* v. *McKinney,* 170 Conn. 588, 595, 368 A.2d 28 (1976). The writ is proper only when "(1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." *Bahramian* v. *Papandrea,* 184 Conn. 1, 3, 440 A.2d 777 (1981). Thus, in order for Golab to be entitled to the writ, one of the essential conditions that he must establish is that he had a clear legal right to retirement benefits.

In order to qualify for retirement benefits, Golab must have served in the police department for at least twenty-five years. Section 1958 of the New Britain city charter[1] provides in pertinent part that: "Each regu-

---

[1] "[Charter of the City of New Britain] § 1958. BENEFITS PAYABLE; RETIREMENT AGE

"Each regular member of the police department of said city who shall have served in said department 25 years shall, upon his written request, be permanently retired on half pay. Upon reaching the age of 60 years each regular member who has served in said department 25 years shall be retired upon his written request and 2 per cent shall be added to his retirement benefits for each additional year of service after 25 years. Upon reaching the age of 65 years, each member shall be retired on half pay regardless of his years of service, unless such service shall entitle him to greater retirement benefits.

"Any regular member of the police department retiring on or after the first payment of the assessment against the city provided for in Section

lar member of the police department of said city who shall have *served* in said department 25 years shall upon his written request be permanently retired on half pay." (Emphasis added.) Golab was hired as a supernumerary police officer on January 28, 1958. He remained a supernumerary officer until February 7, 1959, at which time he became a regular police officer. He continued to serve as a police officer without interruption until November 21, 1979, when he was suspended from his position. As of the date of his suspension, Golab had served twenty years, nine months and fourteen days in the New Britain police department. After adding his supernumerary service credit time of two years,[2] Golab's total service credit, as of November 21, 1979, equaled twenty-two years, nine months and fourteen days. As of the date of suspension, Golab was two years, two months and sixteen days short of the twenty-five years of police service required to qualify for retirement benefits. Golab's suspension, which lasted from November 21, 1979, to June 14, 1983, when he was ultimately discharged, totaled three years, six months and twenty-three days. Thus, in order to meet the requisite twenty-five years of service, part of Golab's disciplinary suspension time would have to be added to his previous service time.

---

1951 shall receive his benefits from the police benefit fund. In the event that the police benefit fund lacks sufficient funds therefor, said benefits shall be paid from the deficiency appropriation provided for in Section 1956 of the city charter. Any regular member of the police department who shall have retired prior to the first payment of the assessment against the city shall continue to receive his benefits from the deficiency appropriation provided for in Section 1956 of the city charter."

[2] "[Charter of the City of New Britain] § 1962. COMPUTATION OF SERVICE PERIOD

"Service as a regular policeman shall include the 2 years served as a supernumerary officer, no matter how many hours of actual duty were served."

The parties have stipulated that § 1962 has been interpreted to provide for two years of service credit toward the required twenty-five years, if the retiring officer had served as a supernumerary officer for more than one year.

Golab claims that because he had been a member of the police department during his disciplinary suspension, the time during which he had been suspended should be added to his time of service prior to the suspension. Specifically, he argues that § 1958 of the charter "imposes on the defendants a mandatory, non-discretionary duty that a twenty-five year member [of the police department] 'shall, upon his written request, be permanently retired on half pay.' " We disagree.

Although we have not had the occasion to distinguish between "service" and "membership" for the purpose of computing length of service and determining a person's eligibility to receive retirement benefits, this distinction has been made in other jurisdictions. In *State ex rel. Johnson* v. *Buchanan,* 254 Wis. 261, 35 N.W.2d 897 (1949), a police officer was suspended eight times without pay, totaling 213 days, during the twenty-two years of his employment. The court held that the 213 days of suspension time could not be included in his length of service computation for pension purposes. "A member of the department who has by reason of his misconduct been suspended from duty without pay is in no position to claim that he has served as a member of that department during the period of his suspension." Id., 264. Similarly, the court in *Stamper* v. *Los Angeles,* 80 Cal. App. 2d 242, 181 P.2d 687 (1947), held that a policeman was not entitled to credit periods during which he was absent from duty towards the "aggregate service" required for pension purposes. "There is no denying that when a police officer is appointed and takes the oath as such he remains a policeman until he dies, resigns or otherwise terminates his official connection with the department. But he is not in 'service' and his aggregate service is not accumulating unless he performs service." Id., 244; accord *Douglas* v. *Teachers' Retirement Board,* 40 Misc. 2d 870, 872, 244 N.Y.S.2d 173 (1963) (school teacher's

suspension time not included in length of service computation), order affirmed, 20 App. Div. 2d 851, 247 N.Y.S.2d 994, appeal denied, 14 N.Y.2d 485, 200 N.E.2d 219, 251 N.Y.S.2d 1025 (1964); see generally 3 E. McQuillin, Municipal Corporations (3d Ed. 1982) § 12.150, p. 598 (usually, time in which an officer is absent from duty is not counted in computing his aggregate service time).

Golab nonetheless argues that as a member of the police department, he is entitled, as a matter of right, to retirement benefits irrespective of any time he spent under suspension. In doing so, Golab relies primarily on *State ex rel. Kirby* v. *Board of Fire Commissioners,* 129 Conn. 419, 29 A.2d 452 (1942).[3] We, however, find Golab's reliance on *Kirby* inapposite. In *State ex rel. Kirby* v. *Board of Fire Commissioners,* supra, 422, the issue presented to this court was whether a fireman was entitled to retirement benefits as a matter of right although he had been placed under suspension. We held that the Hartford city charter provisions regarding retirement benefits provided that the board must retire any member of the fire department who met the requisite qualifications. Moreover, we concluded, that those provisions did not except from membership persons who are employees but who are under suspension for charges of misconduct. Id., 424. As we stated, the suspension had not "even temporarily deprived [Kirby] of all his rights and privileges as a member of the

---

[3] Golab also relies on the Superior Court case of *Banulski* v. *New Britain Board of Police Commissioners,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 408779 (April 25, 1983). In *Banulski,* the trial court relied extensively on *State ex rel. Kirby* v. *Board of Fire Commissioners,* 129 Conn. 419, 29 A.2d 452 (1942), in holding that the period of suspension may be included in computing the length of service. We, however, conclude that *Kirby* is dissimilar to the present case and therefore do not consider *Banulski* to be of precedential value. Additionally, because *Banulski* has never reached this court, there is no need, at this time, to determine the propriety of that court's decision.

department. He still continued to be a member of the department." Id., 423.

*Kirby,* however, is distinguishable from the present case in one important respect. Unlike Golab, Kirby, at the time he made his request for retirement, had *served* the requisite number of years to be eligible to receive retirement benefits. Id., 425–26. Therefore, although we held that the suspension did not affect Kirby's membership in the fire department, we did not address whether the suspension affected the computation of his length of service in the department because he had already served the requisite number of years. We did note, however, that "[i]t is to be presumed therefore that the order of suspension was the usual one and suspended [Kirby] only from duty and deprived him of his pay. This would mean simply that temporarily *he was prevented from rendering services* as a member of the department . . . ." (Emphasis added.) Id., 423.

Significantly, although Golab had been a member of the New Britain police department while under suspension, he did not work or render services during that time. Section 1958 of the New Britain city charter mandates that, in order for a police officer to be eligible for retirement benefits, he must not only be a member of the police department for twenty-five years, but must also *serve* in the department for that period of time. Accordingly, we hold that since Golab did not work while under suspension, that time cannot be added to his period of service prior to the time he had been suspended for the purpose of computing his length of service. Thus, because he did not serve in the police department for twenty-five years, Golab failed to establish an essential condition for a writ of mandamus, namely, that he had a clear legal right to retirement benefits. *Bahramian* v. *Papandrea,* supra.

Golab also contends that the city and the board, by denying him retirement benefits, violated the equal pro-

tection clause of the fourteenth amendment to the United States constitution and article first, § 1, of the Connecticut constitution. He apparently claims that, because another person who had also purchased a promotion has received retirement benefits while he has not, he has been denied equal protection of the laws. Golab relies upon the circumstances relating to the retirement of Robert J. Hackett, a lieutenant in the New Britain fire department, as set forth in the opinion of the Appellate Court in *Hackett* v. *New Britain*, 2 Conn. App. 225, 477 A.2d 148, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984). Hackett had been permitted to retire on April 29, 1980, with a pension of $13,250.76 based on his salary after achieving the position of deputy fire chief, subject to review in the event that it should later be established that he had illegally been promoted to that rank. After his conviction of numerous felonies relating to his role in fixing certain promotional examinations, the board of trustees of the New Britain firemen's pension fund found that Hackett had illegally obtained his promotion both to captain and to deputy chief. He was, however, permitted to retain a reduced pension of $7766.79, corresponding to his status as a lieutenant, a promotion he apparently had obtained legally on May 24, 1968.

Equal protection of the laws prohibits the unequal treatment of those who are *similarly situated. State* v. *Candito,* 4 Conn. App. 154, 159, 493 A.2d 250 (1985); see also *Johnson* v. *Manson,* 196 Conn. 309, 321–22 n.12, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986). Hackett had become a full-time fireman on November 20, 1950, and, at the time of his retirement had approximately thirty years of service, which was more time than necessary to qualify for retirement benefits. Golab, on the other hand, never completed the twenty-five years of

service required for a pension. Unlike Hackett, he could become eligible for a pension only if a part of the period of time when he was under suspension was added to his years of prior service. Accordingly, there is little basis for Golab's claim that no reasonable distinction can be made between him and Hackett in respect to pension eligibility.

Moreover, "[a]n equal protection claim based on unequal application of the law does not arise from conclusory allegations regarding past decisions, but rather must be established by competent evidence." *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 321, 438 A.2d 103 (1980); see *Snowden* v. *Hughes,* 321 U.S. 1, 8, 64 S. Ct. 397, 88 L. Ed. 497, reh. denied, 321 U.S. 804, 64 S. Ct. 778, 88 L. Ed. 1090 (1944); cf. *State* v. *Haskins,* 188 Conn. 432, 474, 450 A.2d 828 (1982). There must be a showing of intentional or purposeful discrimination. *Snowden* v. *Hughes,* supra; *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* supra; cf. *State* v. *Townsend,* 167 Conn. 539, 554, 356 A.2d 125, cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975); *Bianco* v. *Darien,* 157 Conn. 548, 559–60, 254 A.2d 898 (1969). This case was tried to the court on stipulated facts. There was no allegation of discrimination and the trial court made no such finding. Additionally, on appeal, Golab has not claimed that the actions of the city and the board were the product of intentional and purposeful discrimination. Therefore, his claim of unequal protection of the laws must fail.

The trial court, in denying Golab's application for a writ of mandamus, relied on the equitable doctrine of "unclean hands," and thus did not consider whether his suspension time should have been calculated as part of his total service time. Since Golab did not have twenty-five years of service we need not decide whether the trial court correctly denied his application because

he had "unclean hands." "[T]his court is authorized to rely upon alternative grounds supported by the record to sustain a judgment. *Henderson* v. *Department of Motor Vehicles,* 202 Conn. 453, 461, 521 A.2d 1040 (1987); *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 54, 434 A.2d 306 (1980). Even if we were to have concluded that the trial court based its judgment on erroneous grounds, we would properly affirm the judgment 'if the same result is required by law.' *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 443, 430 A.2d 25 (1980); *Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978)." *Pepe* v. *New Britain,* 203 Conn. 281, 292, 524 A.2d 629 (1987). Because Golab had not completed twenty-five years of service in the New Britain police department, he had no clear legal right to retirement benefits. He therefore was not entitled to a writ of mandamus. Accordingly, we affirm the judgment of the trial court.

There is no error.

In this opinion the other justices concurred.