JAMES J. SOTIRE, SR. *v.* CITY OF STAMFORD ET AL.
(6328)

SPALLONE, DALY and FOTI, Js.

Argued January 18—decision released August 29, 1989

*William F. Gallagher,* with whom, on the brief, were *Noel R. Newman* and *Kerrie C. Dunne,* for the appellant (plaintiff).

*Thomas F. Maxwell, Jr.,* with whom, on the brief, was *Kathleen M. Byrne,* for the appellees (defendants).

SPALLONE, J. The plaintiff, James J. Sotire, Sr., appeals from the judgment for the defendants rendered in his action for a writ of mandamus and for injunctive and other equitable relief. The plaintiff claims that the trial court erred (1) in refusing to exercise jurisdiction over a certain individual, and (2) in holding that no procedural due process right of the plaintiff had been violated. We find no error.

The plaintiff has served as the building official and zoning enforcement officer of the city of Stamford since 1966. During 1983 and 1984, the Holiday Inn's Crown Plaza was under construction in Stamford. The plaintiff's office was responsible for performing the inspections necessary to ensure that all construction complied with state building codes. If building code requirements were met, the plaintiff's office would issue a certificate of occupancy. The plaintiff had the power to seek suspension of the hotel's operations for any violation of the city's municipal codes or ordinances.

On January 3, 1984, the plaintiff made a telephone call to John Healey, the Holiday Inn's engineer, who was in charge of internal operations such as heating and air conditioning for the soon-to-be opened hotel. During his conversation with Healey, the plaintiff strongly recommended that the Holiday Inn award its garbage and refuse handling contract to a company owned by a friend of the plaintiff. Healey tape-recorded the conversation. By the time the telephone conversation took place, the Holiday Inn had already solicited bids for garbage and refuse service from various refuse

haulers. Shortly before the plaintiff's call to Healey, the Holiday Inn had rejected a bid submitted by the company recommended by the plaintiff. The plaintiff urged Healey to reconsider the rejection and to award the contract to the company owned by the plaintiff's friend.·

A Holiday Inn staff member delivered a tape of the conversation between the plaintiff and Healey to the Stamford police department's special investigations unit. The police subsequently conducted an investigation, but the plaintiff was never charged with any crime.

The Stamford Advocate, a local newspaper, also received a copy of the tape and, on or about September 20, 1985, an Advocate reporter brought the matter to the attention of Thom Serranni, mayor of the city of Stamford. Upon hearing the tape, Serranni filed a written complaint with the defendant board of ethics of the city of Stamford (board)[1] and requested that the board conduct an investigation into a possible violation of the city's code of ethics. In addition, Serranni informed the plaintiff's supervisor, John O'Brien, the commissioner of public works, about the tape. After conducting his own investigation and giving the plaintiff an opportunity to explain himself, O'Brien immediately suspended the plaintiff, with pay, effective September 20, 1985.

The board provided the plaintiff with written notice of its inquiry, heard testimony from the plaintiff and others at public hearings, offered to subpoena witnesses on the plaintiff's behalf, accepted all exhibits and evidence offered by the plaintiff, and placed no limit on the scope of the plaintiff's counsel's examination and

---

[1] The board, a volunteer lay board consisting of five resident electors of the city of Stamford, has the responsibility for investigating and conducting hearings in matters referred to it that arise under the code of ethics.

cross-examination of witnesses. The board and the public had access to and listened to the tape, and a transcript of the tape was provided. At the conclusion of the public hearing, the board engaged legal counsel to assist it in interpreting the code. The board afforded the plaintiff's counsel the opportunity to meet with and to present information to its retained counsel. Subsequently, on March 3, 1986, the board rendered its written memorandum of decision, finding that the plaintiff had violated § 4 of the code.[2]

Shortly after the board had begun its inquiry, the plaintiff, by complaint dated December 9, 1985, commenced an action against the city of Stamford, the board, and the individual members of the board, seeking to enjoin the defendants from further investigating, conducting hearings on, or rendering a decision on any charge that the plaintiff had violated the city code of ethics. The plaintiff claimed that the board was conducting hearings in violation of his right to due process in that, inter alia, the board had failed to give him adequate notice of the proceedings, had failed to promulgate rules and regulations as required by the code, and had failed to record the proceedings. The plaintiff further claimed that the board had prejudged the matter and thus was not an impartial decision maker. Finally, the plaintiff claimed that if the board found him to be in violation of the code, he would be subject to demotion or discharge under § 740 (2) of the Stamford charter. In order to avoid immediate and irreparable harm to his constitutional rights, his reputation in the community and his livelihood, the plaintiff

[2] Section 4 of the code provides in pertinent part: "No officer or employee shall engage in any business or transaction or have a financial or personal interest, directly or indirectly, which is in conflict with or incompatible with the proper discharge of his official duties or would tend to influence or impair his independence of judgment and action in the performance of his official duties."

requested preliminary and permanent injunctive relief to restrain the defendants from further investigating any complaint regarding a violation on his part of the code of ethics. On January 28, 1986, the parties stipulated that the action would be withdrawn without prejudice to either party to reinstitute proceedings within ten days after the board rendered its decision. The board then concluded its hearings and deliberations and rendered its decision against the plaintiff on or about March 3, 1986.

On or about April 1, 1986, the plaintiff filed an amended complaint[3] against the city of Stamford, the board, and the individual members of the board. In the amended complaint he alleged that the board had repeatedly disregarded and violated the code in connection with the matter involving the plaintiff,[4] that, as a result, he had been deprived of his federal and state

---

[3] Although the parties had stipulated that the action brought by the plaintiff in December, 1985, would be withdrawn, the plaintiff did not withdraw it.

[4] Specifically, the plaintiff alleged in the amended complaint that the board had "ignored, disregarded and violated the Code in one or more of the following respects:

"(a) In that it failed to promulgate rules and regulations of procedure after a public hearing as required by Section 12B of the Code;

"(b) In that it initiated action against the plaintiff prior to receiving a written complaint on a 'form prescribed by the Board' as required by Section 12C2a of the Code;

"(c) In that it initiated action against the plaintiff prior to receiving a written complaint signed under penalty of false statement as required by Section 12C2a of the Code;

"(d) In that it failed to allow the plaintiff to be represented by counsel during all phases of the proceedings as required by Section 12C2a of the Code;

"(e) In that it failed to take oral testimony under oath at the public hearings as required by Section 12C2b of the Code;

"(f) In that it failed to record and transcribe all public hearings as required by Section 12C2b of the Code;

"(g) In that it failed to create and maintain a handbook clearly explaining rights and responsibilities of municipal officers and employees under the Code as required by Section 12C4 of the Code."

constitutional rights to procedural due process[5] and that his livelihood had been placed in jeopardy and his reputation damaged. In his claim for relief, he requested: (1) preliminary and permanent injunctions to prohibit "the defendants, their agents, servants and employees, from proceeding in any manner on any charges that the plaintiff violated the Code of Ethics of the City of Stamford, including, but not limited to, conducting further investigations, conducting further hearings and/or acting on any decision of the Board of Ethics . . . that the plaintiff violated the Code"; (2) a writ of mandamus requiring the defendants to promulgate rules and regulations of procedure as required by § 12.B of the code of ethics; (3) a writ of mandamus ordering the defendants to prescribe a form for written complaints, as required by § 12.C.2.a. of the code of ethics; and (4) a writ of mandamus ordering the defendants to write a handbook clearly explaining the rights and responsibilities of officers and employees of the city of Stamford, as required by § 12.C.4 of the code of ethics. On July 8, 1986, O'Brien notified the plaintiff that, due to the plaintiff's misconduct, he was being demoted in rank and pay. Thereafter, on July 29, 1986, the trial court issued a temporary injunction prohibiting the city of Stamford, its agents, servants and employees from filling the position of chief building inspector until the matter had been decided by the court. This order was served on O'Brien, although he was not specifically named in it.

By memorandum of decision dated July 20, 1987, the trial court, *McGrath, J.,* found the issues for the defendants, and judgment entered accordingly on August 4,

---

[5] The plaintiff also alleged that he had been "deprived of his federally guaranteed rights provided in Title 42, Sections 1983 and 1985, of the United States Code" and, without elaboration, that he had also been "deprived of his rights under the laws, statutes and ordinances of the State of Connecticut and City of Stamford."

1987. The trial court made the following rulings: (1) even if it was assumed that constitutionally protected liberty and property interests were involved, the board did not deprive the plaintiff of such interests merely by concluding that there had been a violation of the code of ethics; (2) the plaintiff's request for an injunction prohibiting the board from acting was moot in that the board had already issued its decision and therefore there was nothing to enjoin; (3) mandamus did not lie; and (4) issues raised by the plaintiff regarding the propriety of action taken by O'Brien would not be addressed because O'Brien was not a named defendant and the court lacked jurisdiction to address the claims.

The plaintiff's first claim of error is that the trial court erred in failing to exercise jurisdiction over O'Brien. In its memorandum of decision, the trial court stated: "The final issues raised by the plaintiff address the impropriety of the actions of John O'Brien. It is noted that Mr. O'Brien is not a named defendant and this court lacks jurisdiction to address these claims." It is apparently this ruling that the plaintiff challenges on appeal. The record does not reveal, however, what claims were before the trial court when it so ruled or what the basis for the ruling was, and the plaintiff has failed either to obtain an articulation pursuant to Practice Book § 4051 or to refer us to the relevant portions of the transcript; see Practice Book § 4065 (d); or official court file; see Practice Book § 4074. It is the appellant's responsibility to ensure that an adequate record is presented for review. Practice Book § 4061; *J. M. Lynne Co.* v. *Geraghty,* 204 Conn. 361, 376, 528 A.2d 786 (1987). The plaintiff has failed to discharge that responsibility. Under such circumstances, we decline to review the plaintiff's claim.

The plaintiff's second claim is that the trial court erred in holding that he was not deprived of his rights

to procedural due process under either the Connecticut constitution or the United States constitution. Although the trial court did rule that no violation of procedural due process rights was involved, we need not review that ruling because the trial court's decision in favor of the defendants may be upheld on other grounds. We need not consider constitutional issues unless absolutely necessary to the decision of the case. *Edelson* v. *Zoning Commission,* 2 Conn. App. 595, 600, 481 A.2d 421 (1984). We are authorized to rely upon alternative grounds supported by the record to sustain a judgment. *Golab* v. *New Britain,* 205 Conn. 17, 27, 529 A.2d 1297 (1987). We uphold the judgment of the trial court because we find that the court correctly decided that the plaintiff was not entitled to the writs of mandamus or to the injunctive relief requested.

The plaintiff's complaint alleged that the board had determined that he had violated the code by engaging in the telephone conversation with Healey; that it had done so only after failing to provide appropriate procedural safeguards, in violation of his state and federal constitutional rights to due process; that, as a result, the plaintiff's livelihood was endangered and his reputation injured; and that, unless his requests for relief in the form of a permanent injunction and writs of mandamus were granted, he would suffer immediate and irreparable harm "to his constitutional rights, his rights under the laws, statutes and ordinances of the United States, State of Connecticut and City of Stamford, his reputation in the community, and his livelihood . . . ." The trial court correctly concluded that the plaintiff's request for injunctive relief was moot insofar as it related to activity on the part of the board, which had already completed its investigation and rendered its decision. Moreover, to the extent that the request for injunctive relief can be construed as a request that the defendant city be enjoined from tak-

ing action to alter or terminate the status of the plaintiff's employment, the trial court properly denied such relief. Where there is an adequate remedy at law, there is no entitlement to an injunction. *Stocker* v. *Waterbury,* 154 Conn. 446, 449, 226 A.2d 514 (1967); see also *Clark* v. *Gibbs,* 184 Conn. 410, 419, 439 A.2d 1060 (1981); *Theurkauf* v. *Miller,* 153 Conn. 159, 161, 214 A.2d 834 (1965); *Stapleton* v. *Lombardo,* 151 Conn. 414, 416, 198 A.2d 697 (1964). The plaintiff had available an administrative remedy, the grievance procedure provided for by the collective bargaining contract between the city and the union of which he was a member. Because the plaintiff had an adequate alternative remedy, the trial court did not err in refusing to enjoin the city from acting to alter or terminate the plaintiff's employment.

With regard to the plaintiff's requests for writs of mandamus, the trial court properly concluded that, under the circumstances, the writs should not issue. The plaintiff requested writs of mandamus for the following purposes: (1) to order the defendants to promulgate rules and regulations, as required by § 12.B of the code of ethics; (2) to order the defendants to prescribe a form for written complaints, as required by § 12.C.2.a. of the code; and (3) to order the defendants to create and maintain a handbook clearly explaining, with practical examples, the rights and responsibilities of officers and employees of the city of Stamford, as required by § 12.C.4. of the code. "Mandamus is an extraordinary remedy, available in limited circumstances for limited purposes. *Beccia* v. *Waterbury,* 185 Conn. 445, 453, 441 A.2d 131 (1981)." *Golab* v. *New Britain,* supra, 19. The issuance of the writ rests in the discretion of the court, and that discretion will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks. Id. "The writ is proper only when '(1) the law imposes on the

party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy.' *Bahramian* v. *Papandrea,* 184 Conn. 1, 3, 440 A.2d 777 (1981)." *Golab* v. *New Britain,* supra, 20. Even if it is assumed that, as a general matter, the board had a plain positive duty under the law to do the things that the plaintiff requested the court to order it to do by issuing writs of mandamus, and that the plaintiff had a clear legal right to the performance of those duties, the writs were properly denied because the plaintiff could no longer benefit in any meaningful way from the granting of the writs. " 'Even though the plaintiff has a legal right to the matter sought, the writ will not issue if that right be nothing more than a naked right. In addition to a bare legal right, he must have a proper interest in, and a proper purpose to be served by, the doing of the act sought to be ordered. . . . "If the right sought to be enforced is or has become a mere abstract right, the enforcement of which will be of no substantial or practical benefit to the petitioner, the writ will not issue though otherwise the applicant would be entitled to it." *State ex rel. Shelton* v. *Edwards,* 109 Conn. 249, 253, 146 A. 382 [1929].' *State ex rel. Donahue* v. *Holbrook,* 136 Conn. 691, 693, 73 A.2d 924 [1950]." *Pape* v. *McKinney,* 170 Conn. 588, 595–96, 368 A.2d 28 (1976). The interest of the plaintiff in this case in the issuance of a writ of mandamus for the purposes stated was tied to his having been made the focus of a board inquiry. Whatever legally cognizable interest he may have had in a prescribed complaint form, duly promulgated board regulations, and a handbook on ethics prior to the board proceedings, that interest did not survive the board's completion of proceedings and its rendering of a deci-

sion. Accordingly, the trial court correctly refused to grant the plaintiff's request for writs of mandamus.

We uphold the judgment of the trial court on the ground that the plaintiff was not entitled to any of the relief requested.

There is no error.

In this opinion the other judges concurred.