[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The state board of education and the commissioner of education, Gerald N. Tirozzi, bring this action against the Waterbury Board of Education, the City of Waterbury, the Mayor of Waterbury, and the Board of Alderman of Waterbury to enforce the provisions of C.G.S. 10-226a to 10-226e, which require local boards of education to correct conditions of racial imbalance in the public schools. The complaint is in three counts. In Count I, the plaintiffs seek a writ of mandamus compelling the defendants to implement a certain plan for eliminating racial imbalance in the Waterbury schools. In Counts II and III, the plaintiffs seek essentially the same result by injunction and declaratory judgment. All parties have moved for summary judgment and have filed memoranda of law, affidavits, and other materials in support of their respective positions. There are no issues of material fact in dispute. The pleadings are closed. The court concludes that the plaintiffs are not entitled to judgment as a matter of law. CT Page 5933
Sections 10-226a through 10-226e of the General Statutes establish a system for identifying public schools where racial imbalance exists and for establishing plans to eliminate it. Racial imbalance is defined as a condition wherein the proportion of pupils of racial minorities in one school in a district "substantially exceeds or falls substantially short" of the proportion of such pupils in all of the schools in the district. Using data submitted by the local boards, the state board of education notifies the appropriate local board whenever it identifies a school which is racially imbalanced. That local board of education is then required "to prepare a plan to correct such imbalance" and submit it to the state board of education for approval. The state board reviews the plan and, if it determines it to be satisfactory, approves it. The local board is then required to "submit quarterly reports on the implementation of the approved plan, as the state board of education may require." Section 10-226e provides the state board the authority to establish regulations "for the operation of sections 10-226a to 10-226e, inclusive, including times and procedures for reports . . ., and the criteria for approval of plans to correct racial imbalance and fix standards for determination as to racial imbalance." The state board has promulgated regulations. Pertinent to this case are Regulations of State Agencies 10-226e-6(b) and 7. Section10-226e-6 (b) provides, in part, that if the state board approves the local board's plan, the local board "shall implement the plan in accordance with the timetable indicated in such plan." Section 10-226e-7 provides, in part, that if the local board fails to implement the approved plan, the state board "may undertake such other actions as may be authorized by law to cause the (local) board of education to be in compliance" with the law and regulations.
A threshold issue raised by the defendants is whether the statutes and regulations authorize the state board to bring an action in this court to compel the Waterbury Board of Education and the other defendants to implement a corrective plan for the Waterbury schools. This court concludes that the plaintiff state board has the requisite statutory authority. Section 10-4a of the General Statutes identifies the educational interests of the state, including "that each child shall have . . . equal opportunity to receive a suitable program of educational experiences" and "that the mandates in the general statutes pertaining to education within the jurisdiction of the state board of education be implemented." Clearly, the elimination of racial imbalance in the public schools, as mandated by C.G.S. 10-226a et seq., falls within the broad general educational interests of the state. Section10-4b of the general statutes authorizes the state board to seek orders from this court to compel local boards to carry out CT Page 5934 its orders implementing the educational interests of the state. These statutes, read in conjunction with C.G.S. 10-226a et seq. and the regulations, authorize the state board, in an appropriate case, to obtain judicially enforced compliance with the racial imbalance statutes.
As indicated, the facts giving rise to this case are undisputed. On December 5, 1984, the plaintiff state board found the Driggs, Carrington, Walsh, and Maloney Schools in Waterbury to be racially imbalanced within the meaning of the statutes and regulations. Following a hearing, the state board ordered the Waterbury Board of Education to submit a district-wide plan by September 5, 1985. On September 5, 1985, the Waterbury Board submitted a plan, but the state board disapproved it. The Waterbury Board was ordered to submit a new plan by January 2, 1986. On December 30, 1985, the Waterbury Board submitted another plan. On February 5, 1986, the state board gave only conditional approval to this new plan because the Maloney School portion of the plan did not adequately correct the racial imbalance in the Maloney School. Thereafter, the Waterbury Board submitted a plan to correct the racial imbalance in the Maloney School by constructing a new school and merging the Maloney School with the Barnard School. On June 4, 1986, the state board conditionally approved the Maloney School portion of Waterbury's plan subject to submission of a detailed timetable for construction of the new school. On September 4, 1986, the Waterbury Board of Education provided the state board with the timetable and on October 8, 1986, the state board gave full approval to the Maloney School portion of the plan.
On May 6, 1987, the state board found, pursuant to Conn. Dept. Reg. 10-226e-7 (a), that the Waterbury Board of Education had failed to take substantial steps to implement its plan and directed the Board to amend the timetable for the construction of the new school. On September 3, 1987, the state board approved the amended timetable for acquisition, construction, and opening of the new school by September 1989. According to the amended timetable, the site for the new school was identified as the "Pathmark" site and the bonding necessary for acquiring the site and constructing the new school and renovating some existing buildings was to be approved by the Waterbury Board of Aldermen by December 1987.
On October 26, 1987, a serious obstacle developed when, the Board of Aldermen rejected the bonding for the "Pathmark" site. This action was based on questions concerning condemnation procedures, property appraisals, economics of the proposal, costs, zoning, alternate sites, the size of the parcel of land, the displacement of residents, the loss of jobs CT Page 5935 through displacement of businesses, the distances to other schools, traffic problems the new school would generate, renovation of existing schools, an underground waterway flowing under the parcel, environmental hazards, bussing, safety of the children, and state assistance and bonding procedures. The Board of Alderman's action was actually the result of an insufficient number of votes in favor of the bond issue, even though a bare majority approved it. There is no evidence before the court in this case even suggesting that there was any reason other than those stated for the Board's action. Furthermore, the Board of Aldermen has consistently taken the position in oral argument before this court that it supports the purposes of the racial imbalance statutes. The court's decision on these motions for summary judgment, therefore, is based on the assumption that the Board acted in good faith and for the reasons it expressed in voting to deny the bond issue.[1]
On January 6, 1988, the state board again found that the Waterbury Board of Education had failed to take substantial steps to implement the plan (as amended) and notified that board of its finding. On January 21, 1988, the state board filed this action against the defendants seeking an order to implement the plan, including construction of the new school.[2]
On February 1, 1989, after the filing of this suit, the Waterbury Board of Education requested the Waterbury Board of Aldermen to approve a new site designated as the "Everybody's Market" site for acquisition and construction of a new school for the racial balancing plan; and on February 6, 1989, the Board of Aldermen voted to approve the "Everybody's Market" site. Thereafter, however, the Waterbury Board of Education withdrew the "Everybody's Market" site because of cost and environmental concerns revealed in subsequently obtained reports.
To date, the Driggs, Carrington and Walsh Schools are in compliance with the racial balance statutes and regulations. Accordingly, the plaintiff's complaint is directed only at the Maloney School portion of the plan.
Summary judgment is to be rendered in pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is thus entitled to judgment as a matter of law. Yanow v. Teal Industries, 178 Conn. 262, 268 (1979). The general rules governing writs of mandamus, injunctions and declaratory judgments are well established. "Mandamus is an extraordinary remedy, available in limited circumstances for limited purposes." Golab v. New Britain, 205 Conn. 17, 19 (1987). The writ is proper only when "(1) the law imposes on the party CT Page 5936 against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." Bahramian v. Papandrea, 184 Conn. 1, 3 (1981). The party seeking the mandamus has the burden of establishing a clear legal right to have the duty performed. Sampietro v. Board of Fire Commissioners, 200 Conn. 38, 41 (1986). "The court will . . . render declaratory judgments as to the existence . . . of any right, power, privilege or immunity." Conn. Practice Bk. 389 (rev'd to 1978, as updated to October 1, 1990). Declaratory judgment is appropriate where "there is an actual bona fide and substantial question in dispute or substantial uncertainty of legal relations which requires settlement between the parties." Conn. Practice Bk. 390(b). The sole function of the trial court in a declaratory judgment action is to ascertain the rights of the parties under existing law. Halpern v. Board of Education, 196 Conn. 647, 654-55 (1985). "`The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is at least founded on the imminence of substantial and irreparable injury.'" Karls v. Alexandra Realty Corporation, 179 Conn. 390,401 (1980) (quoting Scoville v. Ronalter, 162 Conn. 67, 74
(1971) (citations omitted) ) . The rule of proving irreparable harm and lack of an adequate remedy at law is relaxed in the case of a public agency seeking to enforce the provisions of a statute. Conservation Commission v. Price, 193 Conn. 414
(1984). For some uses, a mandatory injunction is indistinguishable from a writ of mandamus. Monroe v. Middlebury Conservation Commission, 187 Conn. 476, 481 (1982). Moreover, the two may be used in combination. Id.
In support of their motion for summary judgment, the plaintiffs argue that the defendants have a ministerial duty pursuant to Conn. Gen. Stat. 10-220 and 10-226 through10-226e to eliminate racial imbalance in the Waterbury Schools. Therefore, plaintiffs argue, implementation of the plan is not discretionary, especially after the plan was approved by the state board. The plaintiffs also argue that since local boards of education are agents of the state for purposes of carrying out the educational interests of the state, the defendants' failure to carry out an obligation, such as the plan in this case, is a breach of fiduciary duty. Particularly with regard to the Waterbury Board of Aldermen, the plaintiffs argue that the Board of Aldermen stand in the same position as the Waterbury Board of Education because Conn. Gen. Stat. 10-240
provides that "[e]ach town shall through its board of education . . . be a school distinct and shall have the powers and CT Page 5937 duties of school districts . . . ." According to the plaintiffs, the Board of Aldermen, the City of Waterbury, the Mayor and the Superintendent of Schools are agents of the state by virtue of the City of Waterbury being a school district.
The critical event which caused the Waterbury Board of Education's state approved plan to expire on the launch pad was the vote by the Board of Aldermen which denied the bond issue. The parties have pointed to no other impediment to the plan's success. But without that financing, the merger of the Barnard and the Maloney Schools in a new building on newly acquired land, which was the cornerstone of the plan, was impossible to effectuate. Therefore, the state's claims and requested remedies must be examined in the context of the circumstances of the Board of Aldermen's vote. As indicated, the Waterbury Board of Education's plan for correcting the racial imbalance called for the acquisition of land and extensive renovation of existing buildings to create a new school large enough to accommodate the pupils of the Barnard and Maloney Schools. Such a plan would obviously require significant capital financing, and just as obviously, under the Waterbury charter, such financing would require favorable action by the Board of Aldermen. The Board of Education, however, submitted the plan to the state board without first securing the financing. For its part, the state board approved the plan on October 8, 1986, even though it was aware that the necessary financing had not been obtained or approved. Eight months later, in June 1987, after some official prodding by the state board, the Waterbury Board of Education wrote to the Board of Aldermen requesting the necessary financing action. The letter engendered considerable discussion at a subsequent meeting of the Board of Alderman, including the expression of some misgivings and concern relating to zoning issues. (See Exhibit B attached to plaintiffs' reply brief dated January 12, 1990). Nevertheless, on September 3, 1987, after the above described meeting of the Board of Aldermen but before that board had voted on the bond issue, the Waterbury Board of Education submitted and the state board approved a new, and what would be the final, timetable for the plan. This called for bond approval by December 1987. This final version of the plan was submitted and approved, therefore, at a time when both the plaintiff state board and the defendant Waterbury Board of Education knew or should have known that they could not expect rubber stamp action by the defendant Board of Aldermen. In fact, they knew or should have known that the crucial financing element of the plan was in doubt, even at the moment when the state board was approving it.
The defendant Waterbury Board of Aldermen argues that it was exercising the discretion granted to it by C.G.S. 10-222
CT Page 5938 when it declined to approve the bond issue necessary to finance the racial imbalance corrective plan. That statute requires local boards of education to seek funding for educational expenses from the local boards of finance, the equivalent in this case being the Board of Aldermen. The statute then authorizes the finance board to make appropriations. It thus creates "divided responsibilities." Waterbury Teachers Assn. v. Furlong, 162 Conn. 390, 395 (1972). The board of finance has discretion to approve or disapprove requests for additional funds and make appropriations accordingly. However, it may not refuse to appropriate funds where the "expenditure (is) for a purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose . . . ." Id. 398, citing Board of Education of Stamford v. Board of Finance, 127 Conn. 345 (1940). In this case, the relevant statutes do not impose on the Waterbury Board of Education the duty to acquire or construct a new school. Indeed, the relevant provision, C.G.S. 10-226c(b), provides that the plan
 . . . shall include, the proposed changes in existing school attendance districts, the location of proposed school building sites as related to the problem, any proposed additions to existing school buildings and all other means proposed for the correction of said racial imbalance. The plan shall include projections of the expected racial composition of all public schools in the district. The plan may include provision for cooperation with other school districts to assist in the correction of racial imbalance.
Plainly, the statute contemplates a variety of appropriate measures for correcting racial imbalance. These may include redistricting or expanding existing buildings, in addition to the possibility of land condemnation and new construction. The statute definitely does not require the school board to choose a solution involving major capital expenditures. Furthermore, all of the parties to this suit regarded the racial imbalance statutes as permitting a wide range of flexibility. Thus, the plan was periodically modified, with the approval of the state board, to accommodate different timetables. Even after this suit was commenced, the Waterbury Board of Education and the Board or Alderman reached a temporary agreement on an alternative site, and it was the Board of Education which subsequently decided not to amend the plan to utilize the new site. The point is that the racial imbalance statutes do not provide that a plan, once approved, imposes a specific, rigid, immutable statutory duty on the board of education or the municipality as a whole. Rather, the CT Page 5939 board of education and the municipality have the general duty to correct racial imbalance by utilizing a plan that is subject to amendment to meet changing circumstances and subject to the approval of the state board.
It follows that the racial imbalance statutes do not "vest in the board of education a discretion to be independently exercised as to the carrying out" of a plan for correcting racial imbalance. There is nothing in these statutes which excludes the participation of the board of finance in accordance with C.G.S. 10-222. Rather, these statutes must be read in harmony with C.G.S. 10-222, in accordance with normal rules of statutory construction, not so as to create an exception to the role of the board of finance. "(O)nly when a board of education is acting directly and in a reasonable manner to fulfill a statutory duty can it accurately be said that it functions outside the municipal governing structure. To hold otherwise would be tantamount to the giving of a blank check to boards of education to spend the money of the municipality without regard to economy, efficiency or other local needs." Waterbury Teachers Assn. v. Furlong, supra, 399. (Emphasis added). In the present case, the Board of Aldermen cited those precise considerations in refusing to approve the bond issue.
Based on all of the facts of this case, the court reaches the following preliminary conclusions:
 1. The Waterbury Board of Education submitted an incomplete plan in that it called for a large capital expenditure without the assurance of the necessary financing.
 2. The state board of education approved a plan that was incomplete and which is impossible to effectuate in its present form.
 3. The Waterbury Board of Alderman had discretion pursuant to C.G.S. 10-222 to reject the bond issue, based on the reasons cited in their affidavit.
The conclusions of the court set forth above lead to the further conclusion that the plaintiffs do not have a clear legal right to compel the defendants, or any of them, to implement the plan approved by the plaintiff state board, as amended, on September 2, 1987. The plaintiffs are not, therefore, entitled to a writ of mandamus, injunction or declaratory judgment. The plaintiffs are entitled, however, to an order requiring the defendant Waterbury Board of Education to submit for approval to the plaintiff state board an CT Page 5940 amendment to the plan or a new plan consistent with this decision. Accordingly, the plaintiffs' motion for summary judgment on Counts I, II and III of their complaint is denied, and the corresponding motions of the defendants in opposition are granted. In accordance with paragraph 4 of their prayer for relief in their complaint and pursuant to the suggestion in the conclusion of their brief in support of their motion for summary judgment, the plaintiffs are invited to move for a hearing to determine what additional orders of the court should be entered with respect to submission of a new plan.
MALONEY, J.