[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner brings this petition for a writ of habeas corpus alleging that the respondent has unconstitutionally denied him eligibility in a program of extended family visiting (EFV). He has actually framed the petition seeking a writ of mandamus compelling the Commissioner to grant his application. The court has elected to treat the petition as one for a writ of habeas corpus since mandamus is an extraordinary remedy, available in limited circumstances for limited purposes. Golab v. New Britain,205 Conn. 17, 19. The writ is proper only when "(1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." Bahramian v. Papandrea, 184 Conn. 1, 3; Id., 20. It is clear that the law does not impose on the Commissioner a duty to provide a program of extended family visiting. G.S. 18-81
authorizes the Commissioner to establish and set rules for rehabilitative methods which obviously leaves the discretion to him. Therefore the petitioner has no clear legal right to participate in such a program.
The petitioner was arrested in October 1990 and has been incarcerated since that time. He is presently housed at Mac Dougall Correctional Institution as an inmate who has been convicted of capital felony under G.S. 53a-54b(3) having committed murder by one who has previously been convicted of intentional murder. That conviction resulted in a sentence of life without the possibility of release. That conviction has been CT Page 13058 appealed which appeal is still pending.
The petitioner testified that while housed at Osborn Correctional Institution he married Emma Pettaway in an Islamic ceremony on November 3, 1994. He immediately made application for EFV on November 21, 1994 to Joann Kertanis whom he believed was the director or coordinator of the program at Osborn. He received a communication from Kertanis dated November 22, 1994 which indicated his acceptance to participate in the program. Petitioner's Exhibit 1. Before any further preparations could be made he was transferred in December of 1994 to Cheshire Correctional Institution where he remained until his transfer to Mac Dougall in July, 1995. On July 25, 1995 he received a disciplinary ticket for disobeying a direct order to be housed in a cell with a fellow inmate who was not Muslim. This resulted in a Class "B" Disciplinary Report. As of July 17, 1995 Administrative Directive 10.6 which contains the minimum requirements of eligibility for EFV provides "No inmate shall be allowed to participate in the EFV Program who is:. . . . d. found guilty of a Class A or B disciplinary offense; and/or e. has not legally entered into marriage with an intended visitor prior to incarceration for the present offense." Although he was notified of his ineligibility by a counselor, Ms. Jack, on April 29, 1996, Petitioner's Exhibit 2, and notified again by Ms. Kertanis on May 5, 1996, Petitioner's Exhibit 7, apparently in reply to his letter to her dated May 1, 1996, Petitioner's Exhibit 6, he obtained certain information as to the need for medical screening for participation in EFV, Petitioner's Exhibit 4, and completed such screening as of September 18, 1996. Petitioner's Exhibit 5. He further testified that he pursued his claim with Warden Hector Rodriguez on May 9, 1996, Petitioner's Exhibit 8, with Commissioner Armstrong on February 11, 1997, Petitioner's Exhibit 10, and with Ms. Gadsen on June 9, 1997, Petitioner's Exhibit 11, that the communication from Ms. Kertanis on November 22, 1994, Petitioner's Exhibit 1, grandfathered him into the program as a participant so that subsequent Amendments of Administrative Directive 10.6 had no effect on his eligibility.
Capt. Edward Saundry of the Department of Corrections testified that while the petitioner was at Cheshire on July 25, 1995 he was given a direct order to be housed with a fellow inmate and he refused to enter the cell which resulted in Flagrant Disobedience for which he was given a disciplinary ticket and placed in segregation. The petitioner's reason was that he was not going to be in a cell with a non-practicing CT Page 13059 Muslim. He further testified that each inmate was given a manual as to the procedure to be followed in requesting a change in cell-mates which is accommodated if prudent. But that there is serious security concerns when direct orders are not followed.
Commissioner Armstrong testified that visiting is a privilege and not an entitlement, particularly the program of extended family visiting. The program was initiated to strengthen family ties with the goal of early and continued rehabilitation. When he took over as Commissioner the program of EFV had degenerated to an unregulated disgrace, fostering marriages solely for the purpose of obtaining sexual relations. He decided to return it to its original purpose as a rehabilitative tool. If he were to recognize consummation of marriage as a religious right to be accommodated, the sign-up sheet would be too large to accommodate and would seriously affect the security of the prison system.
The legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate's constitutional rights. Procunierv. Martinez, 416 U.S. 396, 413. The United States Supreme Court has recognized that the very tense and potentially explosive nature of correctional institutions poses a constant threat to both inmates and correctional personnel alike. Board of Pardons v.Freedom of Information Commission, 19 Conn. App. 539, 542-3 citingJones v. North Carolina Prisoners' Union, 433 U.S. 119, 132. The flourishing of affinity groups whether by race, color or creed can threaten prison security. O'Lone v. Shabazz, 482 U.S. 342,352. The recognition of the petitioner's religious demands for preferred housing or the consummation of marriage would be perceived as favoritism. Id., 352.
The Commissioner or his designee has the discretionary function of granting such extended family visiting, Howard v.Commissioner of Corrections, 230 Conn. 17, 19 n. 3, and any adoption or amendment of such regulation as to that function does not give subject matter jurisdiction to the court. Vincenzo v.Warden, 26 Conn. App. 132, 134-6. Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. Sanchez v. Warden, 214 Conn. 23, 33. Inmates have no protected liberty interest in access to visitors. Santiaco v.Commissioner of Corrections, 39 Conn. App. 674, 680, KentuckyDept. of Corrections v. Thompson, 490 U.S. 454, 460-61. Therefore, the respondent's reasons for denial of the petitioner's application removes any possible due process claim. CT Page 13060
For the above reasons the petition is denied.
Corrigan, JTR