[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This application for a temporary injunction seeks to enjoin the defendants from taking any action to dissolve or act contrary to the normal course of business of the defendant Windsor Group Securities, LLC (WGS). The plaintiff, Jeffrey S. Rubin, brought this action by compliant and application for an ex parte temporary injunction on November 13, 2002. A judge of the Superior Court (Sheedy, J.) issued an ex parte injunction on November 19, 2002. The defendants thereafter filed a motion to dissolve the ex parte injunction. On December 16, 2002, this court held a hearing on whether to continue the injunction.
WGS is an investment banking firm, a Connecticut limited liability company; see General Statutes § 34-100 et seq; and is registered as a broker-dealer with the Banking Commissioner of the State of Connecticut and the National Association of Securities Dealers. The plaintiff has a substantial membership interest in WGS and is one of its broker dealer agents. However, he is not a principal in WGS since he has not passed a Series 24 exam. Rather, he must work under the supervision of an authorized person; at WGS he operates under the supervision of another member of WGS, Robert Wright.
The plaintiff contends that should WGS and its other members take action to dissolve the firm, clients with whom he is working on deals worth over $200 million will suffer irreparable harm, the firm will lose 3 to 4 million dollars in fees and the plaintiff's goodwill and reputation will be irreparably damaged.
The clients with which the plaintiff has been working are clients of WGS. Indeed, those clients have written contracts with WGS. Moreover, because of the limited nature of his own license, the plaintiff would be unable to continue working with these clients, even if they wished him to do so, should he leave WGS or should WGS dissolve, unless he associated with another firm. CT Page 15334-br
A hearing was held before the court at which the parties were represented by counsel. The only witness who testified at the hearing was the plaintiff. The parties filed post-hearing briefs. In his post-hearing brief, the plaintiff now states that he "has no objection to a modification of the existing ex parte temporary injunction by providing that defendants may commence an action pursuant to Conn. Gen. State. Sec. 34-206 if, prior to any such action, WGS assigns placement agent agreements to a broker dealer or dealers acceptable to him as to each of his transactions and Rubin has transferred his registration as a broker dealer agent to another broker dealer. These conditions are the minimum protections Rubin requires to avoid irreparable harm."
A good deal of the controversy giving rise to this litigation involves a dispute regarding the respective percentage membership interests of the plaintiff, Robert Wright, Susan Wright, Peter Spreadbury and possibly one other entity in WGS. It is unnecessary to the determination of the plaintiff's application for the court to delve into the niceties of that controversy. Regardless of the exact membership interests of the parties, the plaintiff's ownership interest is no greater than 50%, the parties are deadlocked and the plaintiff concedes that the dissolution of WGS is inevitable.
"The principal purpose of a temporary injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." (Internal quotation marks omitted.)Rustici v. Malloy, 60 Conn. App. 47, 56, 758 A.2d 424, cert. denied,254 Conn. 952, 762 A.2d 906 (2000). While that is the purpose of a temporary injunction, something more is required in order for the court to grant such a remedy than a plaintiff's unilateral desire to preserve the status quo. In determining whether to grant such an injunction "the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny or dissolve it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting or continuing it, unless indeed, it is very clear that the plaintiff is without legal right. . . . This criterion necessarily requires consideration of the probable outcome of the litigation. Decisions of our trial courts have frequently referred to the burden of an applicant to show a reasonable degree of probability of success before a temporary injunction to preserve the status quo may be granted. . . . The need to show an irreparable loss unless the status quo is preserved has also been often mentioned. . . . The cases have also alluded to the harm likely to be sustained by other parties as well as the public from preservation of the status quo. . . ." Griffin Hospital v. Commission on Hospitals Health Care, 196 Conn. 451, 457-58, 493 A.2d 229 (1985) CT Page 15334-bs
There was no evidence that the defendants would sustain any harm or hardship if injunctive relief were granted. Nonetheless, the plaintiff has failed to sustain his burden of proving his entitlement to injunctive relief.
The plaintiff's probability of success on his complaint is largely inapposite to this proceeding since he concedes that WGS is at some point in the near future headed for dissolution. See General Statutes §§34-206, 34-207[1]; cf. Infusaid Corp. v. Intermedics Infusaid, Inc.,739 F.2d 661, 667 (1st Cir. 1984). Indeed, it is unclear as to whether his complaint alleges any legally cognizable grounds for preventing such a dissolution. He did not prove that any of the defendants had as yet violated his rights in any respect and based on the defendants' representation that they will not seek to dissolve WGS by internal vote the court cannot ind that they will do so in the future. "Where therer has been no subsantial invasion of the plaintiff's rights, the issuance of an injunction rests in the sound discretion of the trial court."Howard v. Wiehl, 144 Conn. 538, 541, 135 A.2d 361 (1957)
Although the court may surmise that the interests of the clients with which the plaintiff has been working may not be advanced by his departure, neither is there persuasive evidence on which the court may find that those interests will be materially harmed. Specifically, the evidence is insufficient to persuade the court that the plaintiff is indispensable to the interests of the four clients with whom he is working. To be sure, the progress of the projects on which the plaintiff is working may well be delayed, but the court is not persuaded that the interests of the clients will be thwarted by such delay. Moreover, the court cannot find that the remaining members of WGS, specifically Robert Wright, have breached or would breach any duty to those clients to advance their interests within the bounds of the law. "Injunctive relief may not lie where it is predicated on the fears and apprehensions of the party applying for it. . . . Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm." Karls v. Alexandria Realty Corp., 179 Conn. 390, 402,426 A.2d 784 (1980). No such probability has been shown.
The court is also troubled that a gravamen of the plaintiff's application for an injunction is apparently a desire to keep his four clients in the dark. Observing that prior to dissolution of the LLC, WGS must file applications to withdraw with the SEC, NASD and Connecticut Banking Commissioner, applications that are public filings, the plaintiff states that "[i]f Robert Wright. proceeded with his plan to dissolve WGS CT Page 15334-bt by vote of the members, the resulting public application for withdrawal could cause WGS's customers to find another investment bank for their business immediately. To take these actions without Rubin's approval would not even allow him to explain to his clients the need to move to a broker dealer of his choice." Supplemental Memorandum of Jeffrey Rubin in Support of Application for Temporary Injunction, pp. 24-25. Whether the dissolution that the plaintiff admits is inevitable is by internal vote or by judicial action, applications for withdrawal will have to be filed. The clients with which the plaintiff has been working should be informed sooner rather than later that the firm in which they have reposed their trust is in turmoil and headed for early dissolution and that deals worth over $200 million will have to be managed by another firm. And they, rather than the plaintiff, ought to decide where they will be permitted to take their business. Insofar as injury to third parties is a fact to be weighed in deciding whether to grant injunctive relief: Griffin Hospital v. Commission on Hospitals Health Care, supra, 196 Conn. 458; this factor does not militate in the plaintiff's favor.
Finally, the plaintiff has not proven that he would suffer a loss of good will or other irreparable harm if injunctive relief is not granted. The dissolution of business entities, resulting in principals and key employees moving on, is a neutral fact of business life to which no stigma ordinarily attaches. The plaintiff has not persuaded the court that this case is any exception. At best, the plaintiff has shown that neither he nor other members of the firm may ultimately benefit from the fruition of the projects on which he has been working, if injunctive relief were not granted. However, there is no reason to believe that the plaintiff's interest in WGS will not be protected in a judicial dissolution of the firm nor that he will be denied what is due him. See General Statutes § 34-210.[2] While it may be true that, because of the limitations of his license, the plaintiff may not realize the completed fruits of his labors with the clients with which he has been working the overarching facts are that (1) those clients are not his but clients of WGS, (2) WGS is not responsible for the limitations on the plaintiff's license, and (3) there is no evidence that the defendants seek to dissolve WGS primarily to defeat the plaintiff's entitlement to compensation he would earn from the completion of his projects. Cf. Rstatement (Second), Torts § 682 (abuse of process). In any event, the general rule is that "[w]here there is an adequate remedy at law, there is no entitlement to an injunction." Sotire v. Stamford,19 Conn. App. 505, 513, 563 A.2d 1021, cert. denied, 213 Conn. 805,567 A.2d 835 (1989); see Monroe v. Middlebury Conservation Commission,187 Conn. 476, 480, 447 A.2d 1 (1982); accord, Tucker Anthony RealtyCorp. v. Schlesinger, 888 F.2d 969, 974 (2d Cir. 1989). This is a case CT Page 15334-bu where any harm the plaintiff will suffer is monetary and actionable, if at all, in an action at law.
The application for a temporary injunction is denied, and the application to dissolve the ex parte injunction is granted.
BY THE COURT
 ___________________ Bruce L. Levin Judge of the Superior Court