[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS'MOTION FOR SUMMARY JUDGMENT
The plaintiffs have filed an application for a writ of mandamus to compel the defendant Commissioner of Education to select a review panel of three arbitrators or, if the parties agree, a single arbitrator, in accordance with the provisions of General Statutes § 10-153f (c)(7).
"Mandamus is an extraordinary remedy, available in limited circumstances for limited purposes." Golab v. New Britain,205 Conn. 17, 19 (1987). "The writ is proper only when `(1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary'; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy."' Golab v. New Britain, supra 20 (1987) (citing,Bahramian v. Papandrea, 184 Conn. 1, 3 (1981)). Failure to meet any one of these prerequisites is fatal to an action for a writ of mandamus.
The plaintiffs have moved for summary judgment and have filed affidavits, supporting documents and a brief in support of the motion. The defendants have objected to the motion and have, in turn filed affidavits supporting documents and brief in opposition to the motion.
The factual scenario is not in dispute. The plaintiffs are the City of Stamford, which is a school district for the public schools within the city (C.G.S. § 10-240) and the Board of Education of the City of Stamford. The defendants are Vincent Ferrandino, as the Commissioner of Education, the State Board of Education, as well as the Stamford Education Association, the exclusive bargaining unit for Stamford public school teachers, and the Stamford Administrative Unit, the exclusive bargaining unit for Stamford public school administrators.
Because the Stamford Board of Education and the respective units were unable to settle the terms and conditions of employment for the teachers and administrators in the Stamford school system, the issues were submitted for arbitration under CT Page 6845 the provisions of General Statutes § 10-153f.
On December 28, 1993, an arbitration award was issued in connection with the collective bargaining agreement between the Stamford Board of Education and the Stamford Education Association. On December 29, 1993, an arbitration award was issued in connection with the collective bargaining agreement between the Stamford Board of Education and the Stamford Administrative Unit.
General Statutes § 10-153f (c)(7) provides:
 . . . The award of the arbitrators or single arbitrator may be rejected by the legislative body of the local school district . . . Such rejection shall be by a two-thirds majority vote of the members of such legislative body . . . present at a regular or special meeting called and convened for such purpose within twenty-five days of the receipt of the award. If the legislative body . . . reject[s] any such award, [it] shall notify, within ten days after the vote to reject, the commissioner and the exclusive representative for the teachers' or administrators' unit of such vote and submit to them a written explanation of the reasons for the vote. . . .
On January 20, 1994, within 25 days of receipt of the of the awards, the Board of Representatives, the legislative body of the City of Stamford, at a special session called to consider the awards, voted on two items. The first item was entitled "approval of arbitration award between the Stamford Board of Education and the Stamford Education Association." On this item, the minutes indicate the resolution was rejected and the vote was "a vote of 21 no, 9 yes votes with one abstention." The second item was entitled "approval of arbitration award between the Stamford Board of Education and the Stamford Administrators Association." On this item, the minutes indicate the resolution was rejected and the vote was "a vote of 30 no votes with one abstention."
On January 16, 1994, within 10 days of the vote, the Board of Representatives notified the Commissioner of Education and the unions of its votes. The Board claimed in its notices that it had rejected the awards and set forth its reasons for its actions. CT Page 6846
General Statutes § 10-153f (c)(7) provides that:
 Within ten days after the commissioner has been notified of the vote to reject, (A) the commissioner shall select a review panel of three arbitrators or, if the parties agree, a single arbitrator who are residents of Connecticut and labor relations arbitrators approved by the American Arbitration Association and not members of the panel who issued the rejected award, and (B) such arbitrators or single arbitrator shall review the decision on each rejected issue.
The Commissioner, however, did not select a review panel, but rather determined that he was without jurisdiction to appoint such a panel On January 31, 1994, counsel for the Stamford Education Association had raised the issue with the Commissioner's office that the city's legislative body had voted on resolutions to approve the arbitration awards, rather than on resolutions to reject the arbitration awards. After a series of correspondence with the various parties, the Commissioner came to his conclusion that he was without jurisdiction to appoint a panel because the Stamford Board of Representatives had failed to pass a clear and unequivocal motion to reject. Specifically, in his letter notifying the parties of his decision, dated February 7, 1994, the Commissioner wrote:
 "Section 10-153f(c)(7) of the Connecticut General Statutes mandates that, if a legislative body rejects an arbitration award, it do so by a vote to reject such award. In order to ensure compliance with this mandate, the Commissioner of Education has consistently administered the aforementioned statute in such a way as to require passage of a clear and unequivocal motion to reject. This decision is supported by the only judicial decision that addresses a municipality's authority to reject the results of the collective bargaining process between a local board of education and a local education association. See: Pomfret Teacher's Club v. Town of Pomfret (Superior Court, Windham County, No 16049, July 31, 1972)."
It is the position of the plaintiffs that the Board of Representatives clearly rejected the awards by more than a two-thirds majority, that the minutes clearly reflect that rejection, that the Board, through its president, did "notify, within ten days after the vote to reject, the commissioner and the exclusive CT Page 6847 representative for the teachers' or administrators' unit of such vote and submit to them a written explanation of the reasons for the vote." It is the further position of the plaintiffs that the statute mandates the commissioner to select a review arbitration panel upon receipt of that notice.
It is the position of the defendants that, because of the language of Conn. Gen. Stat. § 10-153f (c)(7) and because the Commissioner has the statutory authority under § 10-153f to oversee negotiations and arbitration, it is implicit that the Commissioner has a discretionary duty to perform in determining if the contract has been validly rejected. His determination that a contract has been validly rejected is a condition precedent to ordering the parties into a second round of arbitration. This is particularly true when, as in this case, the Commissioner is presented with direct evidence that the municipality voted to approve, rather than reject, an award.
To this court, an examination of the minutes of the Board of Representatives and the supporting affidavit leaves no doubt that the members understood clearly what they were voting on and why they were voting. The resolutions were presented in the affirmative because, as the evidence of the minutes demonstrate, that was the custom and regular procedure of the Board. Although one member did suggest that the resolution should be framed as a vote to reject, the minutes demonstrate that the Board addressed the issue and elected to consider the resolutions in its customary manner. The President of the Board clearly stated that a no vote was a vote to reject the awards. The notification from the Board to the Commissioner together with the reasons for the Board's actions clearly indicated that the Board had rejected the awards. None of the defendants has claimed the Board voted an approval of the awards.
It appears from the position taken by the Commissioner that were the resolution on the first item to have read "rejection of arbitration award between the Stamford Board of Education and the Stamford Education Association," with the minutes indicating the resolution was approved and the vote was "a vote of 21 yes, 9 no votes with one abstention," and the resolution on the second item to have read "rejection of arbitration award between the Stamford Board of Education and the Stamford Administrators Association," with the minutes indicating the resolution was approved and the vote was "a vote of 30 yes votes with one abstention," there would have been no problem. CT Page 6848
The difference between a vote against approval and a vote in favor of rejection of the awards appears tautological, either is a refusal to accept the awards.
The first definition in the current Webster's CollegiateDictionary for the verb REJECT is "to refuse to accept, consider, submit to, take for some purpose, or use" The first definition in Funk Wagnalls Standard Dictionary defines REJECT as "To refuse to accept recognize believe etc." The first definition in The Oxford Universal Dictionary, Third Edition for the verb REJECT is "To refuse to recognize, acquiesce in, submit to or adopt." Under these definitions, the vote of the Board not to accept the awards was to reject the awards.
Legislative bodies often present an item in the affirmative, so that a "yes" vote signifies approval and a "no" vote signifies rejection Benenson v. Board of Representatives, 223 Conn. 777
(1992). To avoid confusion, propositions put to referenda often are phrased in the affirmative, so voters will know that a "no" vote signifies rejection. Town of Woodstock v. Ferrandino, No. CV 94 0534689 S (Superior Court, Judicial District of Hartford-New Britain at Hartford, January 4, 1995) (O'Neil, J.)
The defendants, as did the Commissioner, cite PomfretTeachers' Club v. Town of Pomfret, No. 16049 (Super.Ct., Windham County., July 31, 1972) for support. In that case, former Connecticut Supreme Court Chief Justice King, then acting as a State Referee, held that a motion made and defeated at a town meeting to "accept" a teacher contract did not constitute a vote to reject the contract within the meaning of Conn. Gen. Stat. § 10-153d(b), which authorizes a referendum to reject such a contract. Instead, Referee King concluded, that the vote was "at most, a vote which failed to approve the contract" However the following year, in the matter of East of East Haddam Educ. Ass'n.v. Town Haddam, No. 21484 (Superior Ct., Middlesex County, April 13, 1973) (Naruk J.) the court held that referenda questions designated "Against the Teachers Contract — No" or "For the Teachers Contract — Yes" were appropriate under General Statutes § 10-153d and that the resulting "No" vote was a rejection of the teachers' contract. Most recently, in Town of Woodstock v.Ferrandino, supra, Judge O'Neil dealt with a resolution reading: "Shall the town of Woodstock approve the contract between the Woodstock Board of Education and the Woodstock Teachers' Association for the years 1994 through 1997, as filed with the CT Page 6849 Woodstock Town Clerk on November 10, 1993?" He concluded that a referendum resulting in 411 "no" votes to 392 "yes" votes was a vote to reject under General Statutes § 10-153d. Judge O'Neil also noted that "[a]fter Judge Naruk's decision was rendered on April 13, 1973, the legislature enacted P.A. 73-391 amending C.G.S. § 10-153d but only in regard to the town clerk's obligation to give public notice of the filing of the contract. That act was passed May 25, 1973 and took effect October 1, 1973. Thereafter the statute was amended at least eleven times without any change intended to overrule, correct or modify what Judge Naruk had said."
There may be provisions of General Statutes § 10-153f
concerning the selection, appointment and supervision of the arbitrators, where the Commissioner is given broad discretionary powers or there may be other provisions where such discretion might be inferred (e.g., § 10-153f (c)(7): "The commissioner shall assist the arbitration panel or the single arbitrator as may be required in the course of arbitration pursuant to this section.").
However, the provision in question does not explicitly authorize any discretion on the part of the Commissioner to determine if he will or will not act based on how a legislative body worded the resolution voted upon which resulted in a rejection of the contract. General Statutes § 10-153f (c)(7) reads, in pertinent part: "Within ten days after the commissioner has been notified of the vote to reject, (A) the commissionershall select a review panel of three arbitrators or, if the parties agree, a single arbitrator, who are residents of Connecticut and labor relations arbitrators approved by the American Arbitration Association and not members of the panel who issued the rejected award . . . ." (Emphasis supplied). Nor, if inference of authority from the statute is claimed, have the defendants offered any legislative history to demonstrate that the statute means to infer that the process of voting rather than the result of the voting was so crucial as to authorize the Commissioner to refuse to recognize and to negate the clear action and act of a legislative body because the proposition before that body was put in the affirmative rather than the negative.
To the contrary, in 1992, the Connecticut Legislature added the provision authorizing rejection by the legislative body of the school district and requiring the Commissioner to appoint a CT Page 6850 review panel, whose review ". . . shall be limited to the record and briefs of the hearing pursuant to subdivision (2) of this subsection, the written explanation of the reasons for the vote
and a written response by either party. In conducting such review, the arbitrators or single arbitrator shall be limited to consideration of the criteria set forth in subdivision (4) of this subsection." (emphasis added). Previously, the statute stated: "Notwithstanding the provisions of subsection (b) of section 10-153d, the decision of the arbitrators or the single arbitrator shall not be subject to rejection by the legislative body of the local or regional school district or by referendum." This history would indicate that the Connecticut Legislature wished to allow the opinion of the body which must authorize funds to pay for the contract to be considered, even where an arbitration award has been made, and that the legislative body's reasons for its vote be considered.
The court is satisfied that under the circumstances in this case, where the legislative body gave timely notice of its vote not to accept, but to reject, the awards and gave its reasons for the vote, the law imposes on the Commissioner a duty to appoint the review panel, the performance of which is mandatory and not discretionary.
The defendant's urge that even if one were to assume that the Commissioner has no discretion in this regard, the fact that there is a direct split of decisional authority with regard to whether a municipality's failure to approve a contract constitutes a rejection of the contract within the meaning of Chapter 166, Teachers and Superintendents, belies any claim that the plaintiff has a clear legal right to the imposition of arbitration.
The defendants posit this claim on the decision in PomfretTeachers' Club v. Town of Pomfret, supra. That decision involved the interpretation of another provision of the Chapter where the legislative body or the voters of the town was acting on a contract agreement between the school board and the union without having to give reasons for the rejection, the decision predated the recent amendments to the statutes which emphasize the consideration which must be given to the reasons for the action of the legislative body, and the decision has not been followed by later decisions.
Obviously, if the Commissioner has no specific or implied CT Page 6851 authority to refuse to appoint a review panel when a timely notice of rejection of the awards has been filed, together with the reasons for the vote, then the plaintiffs have a clear legal right to have the duty performed and the panel appointed.
Finally, the defendants rather ingeniously assert there are other specific adequate remedies available to the plaintiffs. The defendants note that the plaintiffs have filed an action in the nature of an administrative appeal from the Commissioner's actions and have also filed an action to vacate the original arbitration awards. However, this court has previously sustained motions to dismiss each of those other actions filed by one or more of the defendants.
The administrative appeal was dismissed because, as the defendants claimed, the action of the Commissioner was not within a "contested case." The action to vacate the original arbitration awards was dismissed because the plaintiffs, relying on the fact that the Board of Representatives had voted to reject the awards, did not file that action to vacate the arbitration until after the Commissioner's unwarranted refusal to appoint a review panel, so the action to vacate the arbitrators' awards was not timely.
There is no other specific adequate remedy available to these plaintiffs to rectify the Commissioner's failure to appoint a review panel
A writ of mandamus shall issue and the Commissioner is directed to "select a review panel of three arbitrators or, if the parties agree, a single arbitrator, who are residents of Connecticut and labor relations arbitrators approved by the American Arbitration Association and not members of the panel who issued the rejected award" as mandated by General Statutes §10-153f(c)(7).
NIGRO, J.