[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #108
On September 21, 1994, the plaintiffs, the Town of Stratford (Town) and the Stratford Board of Education (Board), filed a complaint against the defendants, the State Board of Mediation and Arbitration (SBMA) and the United Automobile, Aerospace and Agricultural Workers, Local 376 (Union). The plaintiffs allege a violation of General Statutes § 7-473c(d)(5)[1] in their complaint setting forth the following facts. The plaintiff Board and the defendant Union entered into negotiations for a collective bargaining agreement covering certain employees in the public schools of Stratford. The parties were unable to reach an agreement, and the dispute was submitted to the SBMA, for resolution pursuant to the provisions of The Municipal Employees elations Act (MERA), General Statutes § 7-460 to § 7-479.[2] On September 21, 1993, the arbitration panel issued an award. On October 12, 1993, the Stratford Town Council, voted to reject the arbitration award in accordance with § 7-473c(d)(5).[3] On October 20, 1993, the SBMA received written notice that the Stratford Town Council had voted to reject the award.[4] On November 2, 1993, the SBMA notified the Town and the Union that it would not select a review panel of arbitrators because the rejection of that award was ineffective because the Stratford Town Council was not the appropriate legislative body to set aside an arbitration award involving the school board. Following a Request for Reconsideration filed jointly by the plaintiffs, a hearing was held by the SBMA. On April 14, 1994, the SBMA issued a decision affirming the initial determination that the Stratford Town Council was not the appropriate legislative body to reject the interest arbitration award.
On May 24, 1994, the plaintiffs filed a complaint appealing the final decision of the SBMA pursuant to § 4-183. On October 19, 1994, the court, Thim, J., granted the defendant's motion to dismiss stating that "[a] party to an arbitration proceeding may challenge an award by filing in the Superior Court a motion to vacate the award." The court ruled that the motion to vacate was not timely filed, and dismissed the action. The plaintiffs appealed this decision, and it is currently pending before the Connecticut Supreme Court.
The plaintiffs instituted the instant action seeking a CT Page 10599 mandamus directing the SBMA to appoint a review panel of arbitrators. The plaintiffs filed a motion for summary judgment; and a supporting memorandum on March 20, 1995. The defendant union filed a memorandum in opposition to the motion dated April 28, 1995. On May 11, 1995, the Connecticut Conference of Municipalities (CCM), as amicus curiae, filed a memorandum of law in support of the plaintiffs' motion for summary judgment. The plaintiffs filed a supplemental reply memorandum on May 22, 1995. The defendant union filed its own reply brief on May 22, 1995.
The motion for summary judgment is "designed to eliminate delay and expenses of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989). Summary judgment is appropriate when "`the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Suarez v.Dickmont Plastics Corporation, 229 Conn. 99, 105, 639 A.2d 507
(1994). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." Id., 105-06.
"Mandamus is an extraordinary remedy which is designed to enforce the performance of a plain positive duty and the writ will issue only when the person against whom it is directed is under a clear legal obligation to perform the act compelled. . . . Moreover, the party seeking performance of the duty has the burden of establishing his clear legal right to performance. . . ." (Citations omitted; internal quotation marks omitted.) Sampietrov. Board of Fire Commissioners, 200 Conn. 38, 41, 509 A.2d 38
(1986). "The writ [of mandamus] is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy. . . ." (Citations omitted; internal quotation marks omitted.)Golab v. New Britain, 205 Conn. 17, 20, 529 A.2d 1297 (1987).
The defendants argue that the plaintiffs do not meet the conditions necessary for the issuance of a mandamus. They argue that the right to appeal a decision of an arbitration panel should be brought pursuant to a motion to vacate, and that therefore the plaintiffs did not exhaust their administrative remedies. They assert that since the court, Thim, J., ruled that a motion to CT Page 10600 vacate was not timely filed, the plaintiffs initiated this mandamus action. The defendants further argue that the plaintiffs are not entitled to a writ of mandamus because they cannot establish that they have a clear legal right to an order directing the SBMA to appoint a panel of review arbitrators.
"The doctrine of exhaustion [of administrative remedies] is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. To allow a party seeking a [writ of mandamus] to bypass the entire process . . . would be to interject an unnecessary and potentially confusing element into an otherwise well-defined area of the law. . . ." (Citations omitted; internal quotation marks omitted.) Sampietro v. Board of FireCommissioners, supra, 200 Conn. 43. "[W]hen an administrative remedy is provided by law, relief must be sought by exhausting this remedy before resort to the courts. . . ." (Citations omitted; internal quotation marks omitted.) Id., 42.
General Statutes § 52-418 provides that a motion to vacate is available "[u]pon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." A party contesting an arbitration award may file a motion to vacate pursuant to § 52-418, but it also has an additional option provided by § 7-473c(d)(5). Pursuant to § 7-473c(d)(s) the employer may select a review of the arbitration award by a second panel. The plaintiff town council in the present case rejected the award as was its option pursuant to the statute, and therefore, the plaintiffs cannot be said to have failed to exhaust their administrative remedies.
The court finds a clear right to the review of an arbitration award pursuant to § 7-473c(d)(5). Section 7-473c(d)(5) provides that "[w]ithin ten days after receipt of such rejection notice, the CT Page 10601 State Board of Mediation and Arbitration shall select a review panel of three arbitrators or, if the parties agree, a single arbitrator. . . ." (Emphasis added.) This mandatory language creates a clear legal duty on the part of the SBMA owed to, in the language of § 7-473c(d)(5), "the legislative body of the municipal employer." Thus, a mandamus is proper in this action. Nevertheless, the issue still remains as to whether the town council is "the legislative body of the municipal employer" that may properly request a review pursuant to § 7-473c(d)(5).
It is the defendants position that the Stratford Town Council was not "the legislative body of the municipal employer." They argue that the town council was not the proper party to reject the award as it is the legislative body of the municipality, and not the legislative body of the school board. They argue that the school board is defined as a municipal employer by statute, and that its legislative body is the proper party to reject the award. The defendants reinforce their argument by asserting that the decisions of the SBMA are entitled to considerable deference. In contrast, the plaintiffs argue that it properly complied with the provisions of § 7-473c(d)(5).[5] The plaintiffs contend that the school board cannot be the legislative body referred to in §7-473c(d)(5) as it does not have the power to appropriate funds. They refer to legislative history and policy arguments in support of their position that a purpose of the section is to place the decision-making powers in the elected officials.
MERA defines the phrase "municipal employer" as "any political subdivision of the state, including any town, city, borough, district department of health, school board, housing authority or other authority established by law." General Statutes § 7-467(1). Additionally, under MERA, negotiations are entirely the responsibility of the school board itself. See General Statutes §7-474(d). The supreme court has ruled, upon construing the state statutes and the charter for the City of New Britain, that the school board "[has] sole and exclusive control over the appointment and the conditions of employment of its nonprofessional classified employees." Local 1186 v. Board of Education, 182 Conn. 93, 110,438 A.2d 12 (1980). The statutes and the case law thus recognize the school board as a municipal employer. This conclusion, however, does not resolve the issue. The court must determine what entity is the proper "legislative body" of the school board.
"To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that CT Page 10602 language is plain and unambiguous, we go no further. . . . If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from extrinsic aids. e.g., the legislative history. . . . If the legislative history and purpose are also ambiguous, we may resort to intrinsic aids, the technical rules of statutory' construction. . . . In applying these principles, we follow the golden rule of statutory interpretation; the legislature is presumed to have intended a reasonable, just and constitutional result. . . ." (Citations omitted; internal quotation marks omitted.) LoPresto v. State Employees Retirement Commission,34 Conn. App. 510, 517, 642 A.2d 728 (1994).
The defendants argue that the legislative body of the school board referred to in § 7-473c(d)(5) is a portion of the school board. They argue that, pursuant to § 10-220,[6] the school board has broad powers to make policy regarding the school system. The plaintiffs argue that General Statutes § 1-1(m) supports its interpretation that the school board's legislative body is the town council. Section 1-1(m) defines the phrase "legislative body" as "a town meeting, board of aldermen, council or other body charged with the duty of making annual appropriations. . . ." The plaintiffs assert that pursuant to the Stratford Town Charter, the Stratford Town Council is charged with making appropriations for; the school board, and therefore, it is the legislative body of the school board and the proper entity to reject the arbitration award. The plain language of the statute creates an ambiguity as to what entity is the "legislative body" of the school board.
The plaintiffs and the defendants refer the court to legislative history to support their respective interpretations. The defendants explain that one of the purposes of MERA is to place sole and exclusive control of non-certified employees in the hands of the school board. The plaintiffs argue that MERA provides elected officials of the local governments with the ability to approve or reject agreements between the school board and the unions so that the budget concerns of the municipalities will be reflected in the final agreements. The legislative history does not resolve the ambiguities in the statutory language.
In addition, the defendants argue that the SBMA's, interpretation of the term "legislative body of the municipal employer" should receive deference from the court as it is the agency charged with its enforcement.[7] "This rule of deference, however, does not apply to the construction of a statute on an CT Page 10603 issue that has not previously been subjected to judicial scrutiny. . . . In such instances, the construction of the statute is a question of law for the court. . . ." (Citations omitted.) NewHaven Firebird Society v. Board of Fire Commissioners, 32 Conn. App. 585,590, 630 A.2d 131 (1993). While this issue may not have been previously addressed by the judiciary, the supreme court has provided some useful insight in its decisions addressing the provisions of MERA.
The supreme court has stated that "the financial relationship between the local board of education and the municipal government, in particular the board of finance of the town, is complex. . . . Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it. . . . [W]here however, the estimate is for an expenditure for purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, the town board of finance has not the power to refuse to include an appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town, the board of education has no power to exceed the appropriations made. Thus, . . . only when a board of education is acting directly and in a reasonable manner to fulfill a statutory duty can it accurately be said that it functions outside the established municipal structure. To hold otherwise would be tantamount to the giving of a blank check to boards of education to spend the money of the municipality without regard to economy, efficiency or other local needs." (Citations omitted; internal quotation marks omitted.) New Havenv. State Board of Education, 228 Conn. 699, 705-707, 638 A.2d 589
(1994). CT Page 10604
The school board does in fact make legislative decisions "over the appointment of and the wages, hours and conditions of employment of its employees. . . ." See General Statutes § 7-474. However, these decisions are controlled in some respects by the legislative body of the municipality.
The supreme court in Local 1186 v. Board of Education, supra,182 Conn. 93, stated that, "[o]ur reading of the statutes of the state and the provisions of the New Britain charter leads us to conclude that these legislative enactments form a consistent whole. They represent the policy judgment that it is preferable to have the school board, which manages the school budget, assume the responsibility for the terms and the conditions of employment of school employees. Accountability for the maintenance of good public schools is strengthened by authorizing the school board itself to implement merit selection and collective bargaining. The plaintiffs raise the spectre of financial irresponsibility on the part of the school board, of a potential for fiscal chaos that they describe as `horrendous.' These fears are not realistic as long as control over the total amount of the board's budget continues to reside, as it does, in the city's legislative body." Id. at 111.
Section 7-474 (d) provides that "[i]f the municipal employer is a . . . school board . . . which by statute, charter, special act or ordinance has sole and exclusive control over the appointment of and the wages, hours and conditions of employment of its employees, such . . . school board . . . shall represent such municipal employer in collective bargaining and shall have the authority to enter into collective bargaining agreements with the employee organization which is the exclusive representative of such employees . . . and no such agreement or any part thereof shall require approval of the legislative body of the municipality." Section 2.2.1 of the Stratford Charter provides that "[t]he council shall have the power to make, alter and repeal orders and ordinances . . . (e) relative to the appropriation of the monies of the town." This approval or rejection power therefore rests in the town council. The board of education has the power to allocate its resources and to negotiate employment contracts, but the determination of the resources available in the budget allocated to the board of education is determined by the Stratford Town Council. Therefore, the court rules that the plaintiffs' interpretation of General Statutes § 7-473c(d)(5) is correct.
Moreover, General Statutes § 10-153f(c)(7) provides support CT Page 10605 for the interpretation that the Stratford Town Council is the legislative body. It allows an arbitration award to be rejected by the "legislative body of the local school district." Since, this court must interpret the provision "legislative body of the municipal employer" found in § 7-473c(d)(5) a decision interpreting § 10-153f(c)(7) may be instructional. In City of Stamford v.Ferrandino, 14 Conn. L. Rptr. 462 (June 6, 1995, Nigro, J.), which dealt with § 10-153f(c)(7) the Stamford Board of Education was unable to settle the terms and conditions of employment for its teachers and administrators, and it was submitted to arbitration. An arbitration award was issued in the collective bargaining proceeding. The Board of Representatives, the legislative body of the City of Stamford, voted on whether to reject the arbitration award as the legislative body of the local school district. The decision demonstrates that the legislative body of the municipality is the legislative body that rejects or accepts arbitration awards issued to a local board of education.
The plaintiffs' motion for summary judgment is granted. A writ of mandamus shall issue and the State Board of Mediation and Arbitration shall select a review panel of three arbitrators.
LAWRENCE L. HAUSER, JUDGE